JAMES SANDONATO, Respondent, *v.* FRANK C. GRANTO et al., Appellants.

Fourth Department, November 21, 1956.

*George M. Donohue* for appellants.

*George E. Carrie* for respondent.

VAUGHAN, J. This is an action by a real estate broker for the recovery of his commission. Defendants, owners of the property in question, pleaded as their first defense " That plaintiff was not acting in good faith in procuring Frank A. Cicco as a purchaser for the property referred to in the complaint and that he himself was purchasing such property and that Cicco, with whom such alleged contract of sale was made, was acting as a dummy for plaintiff in entering into such contract and not for himself ". Defendants requested the court " to charge that Mr. Sandonato [plaintiff] as the agent of the defendant had no right to purchase this property for his own account. The Court: I refuse so to charge. I find nothing in the evidence that would support such a charge or warrant such a charge." The first defense thus withdrawn from their consideration, the jury brought in a verdict for plaintiff in the sum of $2,000.

We feel that the circumstances surrounding the alleged purchase of the property in question were such that the jury should have been permitted to examine into the relationship between the plaintiff and Frank A. Cicco and determine whether plaintiff was, in fact, the purchaser of the premises. We call attention to the following circumstances which, in our opinion, justify the charge requested.

(1) There was evidence — and plaintiff himself testified before trial — that Cicco had signed the memoranda of sale before plaintiff took them to defendants' home, where the terms were settled and filled in. It is unusual for a buyer to sign a blank sale agreement and deliver it to the sellers' agent, trusting him to insert the terms orally agreed upon. We think a jury might reason that one who had done such a thing was not personally interested in the purchase but was the tool of the one who filled

in the terms. This is particularly true where, as here, there was apparently some negotiation with defendants after Cicco had signed. Defendants agreed to reduce the price to $60,500 but claimed to have required a 6% mortgage. The date for transfer of possession was postponed two weeks, and if defendants may be believed, Cicco was apparently not consulted about that change. That would be some evidence that he had no beneficial interest in the contract.

(2) It seems that Cicco and defendants never spoke to each other and that Cicco never participated in any of the negotiations. It is unusual for the buyer of a business property worth over $50,000 to play so small a role in the negotiations. He had no broker of his own, was content that plaintiff handle the whole affair, and never spoke to the owners of the business. It seems to us he would want to inquire about its profits and prospects if he were in fact the actual purchaser.

(3) The relationship between Cicco and plaintiff is not clear. Admittedly, Cicco who was a contractor, did on occasions work for plaintiff but the business transactions between the two would indicate more. An examination of the checks drawn by plaintiff to the order of Cicco over the period from May 25, 1953 to December 22, 1953 would indicate a close business relationship. During that period plaintiff drew checks to the order of Cicco totaling $25,456.88. Some apparently were for service but others indicate a real estate transaction. We are not interested in the nature of the transactions, however, except as they disclose the relationship between the parties. What inferences should be drawn from the evidence were for the jury.

(4) Plaintiff claimed that Cicco had retained an attorney to represent him on the closing. This was denied by the attorney. If Cicco had not retained an attorney, that might be some evidence that he had no interest in the closing.

(5) There was a question of fact whether plaintiff ever paid $1,000 to defendant. If he did not, that would be some indication that he had never received $1,000 from Cicco and that the latter had no interest in the contract.

(6) Defendant testified that on June 18, when the listing was about to expire, plaintiff requested an extension of time. He did not need an extension if he already had a buyer. Yet within an hour or so after being informed that the extension would not be granted and that the property would be listed with another broker, plaintiff announced that he had procured a buyer. Such quick success, even on terms varying from the listing, is some evidence that plaintiff had determined to take the property himself as an investment, obtaining a more favorable price by

agreeing to reduce a commission to which he was not entitled.

(7) Plaintiff's records, in disclosing the alleged payment of $1,000 to defendant, reveal a debit to " R. E. resale.", meaning real estate for resale. That title would be appropriate if plaintiff had decided to purchase the motel for resale, but if the transaction was what plaintiff says it was, the debit would more likely have gone to some such account as " Commissions Receivable ".

In view of the circumstances above outlined, it is our opinion that a question of fact was presented for the determination of the jury as to whether plaintiff was the actual purchaser of the property and that the court should have charged as requested. It follows that the judgment should be reversed, and a new trial granted.

All concur. Present — McCURN, P. J., VAUGHAN, KIMBALL, WHEELER and BASTOW, JJ.

Judgment reversed, on the law and facts, and a new trial granted, with costs to the appellants to abide the event.